UNITED STATES *v.* S. LEON & Co. (No. 3487)[1]

S. LEON & Co. *v.* UNITED STATES (No. 3493)[1]

[1] T. D. 45677.

United States Court of Customs and Patent Appeals, May 2, 1932

*Charles D. Lawrence*, Assistant Attorney General (*Ralph Folks*, special attorney, of counsel), for the United States.

*Curie, Lane & Wallace* (*Thomas M. Lane* and *Samuel Isenschmid* of counsel) for the importer.

[Oral argument February 9, 1932, by Mr. Lawrence and Mr. Isenschmid]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

These are cross-appeals from a judgment of the United States Customs Court.

Men's straw hats, sewed, valued at less than $9.50 per dozen, were assessed for duty by the collector at the port of New York at 88 per centum ad valorem under paragraph 1406 of the Tariff Act of 1922, as modified by a proclamation of the President, dated February 12, 1926, T. D. 41374, 49 Treas. Dec. 307, issued under, and by authority of, the provisions of section 315 of that act.

The pertinent part of paragraph 1406 reads—

* * * all other hats, composed wholly or in chief value of any of the foregoing materials, whether wholly or partly manufactured, not blocked or blocked, not trimmed or trimmed, if sewed, 60 per centum ad valorem. But the terms "grass" and "straw" shall be understood to mean these substances in their natural form and structure, and not the separated fiber thereof.

The rate of duty provided in the quoted part of paragraph 1406 was increased by the proclamation of the President—

on men's straw hats, whether wholly or partly manufactured, not blocked or blocked, not trimmed or trimmed, if sewed, valued at $9.50 or less per dozen, from 60 per centum ad valorem to 88 per centum ad valorem.

The importer protested, claiming that the provisions of section 315, attempting to confer upon the President the power to increase rates of duty, were unconstitutional; that the President had no authority to increase the rate of duty on a portion only of the articles provided for in paragraph 1406; and that, therefore, the merchandise was properly dutiable at only 60 per centum ad valorem under that paragraph.

On the trial below counsel for the importer offered in evidence the proclamation of the President, a report of the Tariff Commission to the President, dated July 17, 1925, the report of the collector, the report of the appraiser made in answer to the protest, together with a pamphlet printed by the United States Government Printing Office entitled "Transportation costs and costs of production."

The court below admitted in evidence the proclamation of the President but rejected the collector's report, the appraiser's report, the report of the Tariff Commission, and the pamphlet entitled "Transportation costs and costs of production."

The court below held—

That in so far as section 315 of the Tariff Act of 1922 attempts to delegate to the President the power and authority to proclaim and levy an increase in duty on—

the articles described in the President's proclamation, "the same is unconstitutional," and that the President had no power to increase the rate of duty on the involved articles. Accordingly, the protest was sustained.

It is contended here by counsel for the Government that the President acted strictly within the power conferred upon him by the provisions of section 315; that the court below erred in holding the provisions of section 315 unconstitutional, and in holding that the President had changed the form of duty in violation of the provisions of section 315. Other contentions are made by counsel for the Government, which we deem unnecessary to consider in this opinion.

In appeal No. 3493 the importer contends that, although the court below was right in holding the provisions of section 315 unconstitutional, and in holding that the President had no power to change the rate of duty on the involved merchandise, it erred in refusing to admit in evidence the report of the Tariff Commission, and the pamphlet entitled "Transportation costs and costs of production."

The contentions of counsel for importer may be summed up as follows: That, by increasing the rate of duty on men's straw hats, sewed, valued at $9.50 or less per dozen, the President changed the

language and the meaning of paragraph 1406; that the power to perform such an act is wholly legislative; that, if the provisions of section 315 can properly be construed as conferring such power upon the President, they were unconstitutional; that the Tariff Commission was required, by the provisions of section 315, to investigate the costs of production at home and abroad of all articles enumerated or described in paragraph 1406 as a condition precedent to the issuance of a lawful proclamation by the President; that the Tariff Commission as disclosed by its report to the President, unlawfully limited its investigation to men's straw hats; that its report was, therefore, competent evidence on the trial below; that, furthermore, as the ad valorem rate of duty provided in paragraph 1406 applied to all articles covered thereby, regardless of value, and as the President limited the increased rate to articles of a certain character and value, he unlawfully changed the form of duty; that the pamphlet entitled "Transportation costs and costs of production" was competent and relevant evidence because—

Said pamphlet contains a statement of the reasons for and against the inclusion of transportation costs in costs of production supplied to the President by the Tariff Commission, at his express request, for the information of the Attorney General of the United States, and an opinion by the Attorney General, dated February 2, 1926, addressed to the President, on the question whether or not costs of transportation should be taken into consideration in determining the differences in costs of production under said section 315. The Attorney General answered that question in the affirmative, and the President, in promulgating the proclamation on straw hats in question in this case on February 12, 1926, followed said opinion and made his finding on the basis of the figures submitted to him by the Tariff Commission with transportation costs included.

A report of the Tariff Commission may under proper circumstances be competent evidence on the trial of cases of this character. *Norwegian Nitrogen Products Co.* v. *United States*, suit No. 3454, 20 C. C. P. A. (Customs) 27, T. D. 45674, decided concurrently herewith.

However, in the case at bar, the report of the Tariff Commission was offered in evidence to establish that the investigation was limited to men's straw hats. In view of the fact that the President had authority to limit his investigation and findings to one or more articles covered by a provision in a paragraph of that tariff act, it necessarily follows that the Tariff Commission likewise had authority to so limit its investigation. *United States* v. *Fox River Butter Co.*, cross-appeals, suits Nos. 3438 and 3442, 20 C. C. P. A. (Customs) 45, T. D. 45675; *United States* v. *Harry Blandamer*, suit No. 3485, 20 C. C. P. A. (Customs) 45, T. D. 45676, decided concurrently herewith.

There being no claim that the investigation by the Tariff Commission was illegal for any other reason, we must hold that the court below did not err in rejecting the report of the commission. *United States* v. *Fox River Butter Co.*, *supra; Norwegian Nitrogen Products Co.* v. *United States*, *supra.*

Nor do we think the court below erred in refusing to admit in evidence the pamphlet entitled "Transportation costs and costs of production." The sole purpose of counsel for importer in offering that document was to present to the court the reasons "for and against the inclusion [by the President] of transportation costs in costs of production supplied to" him "by the Tariff Commission." If, in ascertaining the differences in costs of production, the President had been limited by statute to a consideration of certain facts, which did not include the transportation costs complained of, and if it had been legally established that the President had included such costs, it might well be argued that the law had not been complied with.

Section 315 (c) provides that the President—

in so far as he finds it practicable, shall take into consideration (1) the differences in conditions in production, including wages, costs of material, and other items in costs of production of such or similar articles in the United States and in competing foreign countries; (2) the differences in the wholesale selling prices of domestic and foreign articles in the principal markets of the United States; (3) advantages granted to a foreign producer by a foreign government, or by a person, partnership, corporation, or association in a foreign country; and (4) any other advantages or disadvantages in competition.

Whatever argument might be made against the inclusion of transportation costs, as an item in determining the difference in production costs, it is evident that the President was not prohibited by statute from considering and including such costs.

It appearing that the President complied with the mandates of the law, his findings of fact are final and conclusive and may not be reviewed by the courts. *United States* v. *Klingenberg*, 153 U. S. 93, and cases cited; *United States* v. *Whitridge*, 197 U. S. 135; *Monongahela Bridge Co.* v. *United States*, 216 U. S. 177; *Hampton, Jr., & Co.* v. *United States*, 14 Ct. Cust. Appls. 350, T. D. 42030, affirmed in 276 U. S. 394.

All of the other issues in this case have been considered and determined in the *Fox River Butter Co.* and *Harry Blandamer* cases, *supra*, and we deem it unnecessary to discuss them here. On the authority of the decisions in those cases, and for the reasons herein stated, the judgment below is *reversed*.